Michael K. O'Donnell, Esq. (MO 3717)
*Of Counsel*
**EDELMAN & EDELMAN, P.C.**
*Attorneys for Plaintiffs*
61 Broadway, Suite 2220
New York, New York 10006
Tel.: (212) 943-1200

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

JON PEARSON and ROBERT LEMKE,

        Plaintiffs,

       *- against -*

MILL CREEK RESIDENTIAL TRUST, LLC,
MCRT INVESTMENTS, LLC,
MCRT NORTHEAST CONSTRUCTION, LLC,
WATER GRANT STREET, LLC,
MILL CREEK CONSTRUCTION CORP.,
MAC-LAD CORP. and ALLEN BLVD INTERIORS, INC.,

        Defendant(s).

-----------------------------------------------------------------------X

      20 CV 2914

**COMPLAINT**

(**Trial by Jury Demanded**)

JON PEARSON and ROBERT LEMKE ("Plaintiffs" or "PEARSON or "LEMKE"), by their

attorneys, Edelman & Edelman, P.C., as and for their Complaint against the defendants, MILL

CREEK RESIDENTIAL TRUST, LLC ("MILL CREEK TRUST"), MCRT INVESTMENTS, LLC,

("MCRT INVESTMENTS"), MCRT NORTHEAST CONSTRUCTION LLC ("MCRT

NORTHEAST"), WATER GRANT STREET, LLC ("WATER GRANT"), MILL CREEK

CONSTRUCTION CORP. ("MILL CREEK CORP."), MAC-LAD CORP. (MAC-LAD") and

ALLEN BLVD INTERIORS, INC. ("ALLEN"), and their owners, members, parents, subsidiaries,

affiliates, agents, servants and/or employees (collectively the "Defendants") allege the following:

## NATURE OF THE CASE

1.     This is an action for damages suffered by the Plaintiffs as a direct and proximate result of the Defendants' negligence and violations of the New York State Labor Law §§240(1), 241(6) and §200, the New York State Industrial Code, OSHA, ANSI and applicable industry standards.

## JURISDICTION AND VENUE

2.     Jurisdiction is based on diversity of citizenship pursuant to 28 U.S.C. §1332 in that Plaintiffs are both citizens of the State of Connecticut, the Defendants are citizens of the States of Delaware, Texas, New Jersey, Florida and/or New York, and the amount in controversy exceeds the sum of Seventy-five Thousand Dollars ($75,000), exclusive of interests and costs.

3.     Upon information and belief, none of the members of the limited-liability-company-Defendants' are citizens of the State of Connecticut, thereby preserving complete diversity as no Plaintiff shares a state of citizenship with any Defendant.

4.     Venue is proper pursuant to 28 U.S.C. §1391(b) (2) and (d) as all or a substantial part of the events or omissions giving rise to the claims occurred in this District, a substantial part of property that is the subject of the action is situated within this District and the actions of the Defendants within this District are sufficient to subject them to personal jurisdiction in this District.

## THE PARTIES

5.     At all relevant times, PEARSON was and is a resident of the State of Connecticut, County of New Haven and resides at 33 Temple Street, New Haven, Connecticut 06473.

6.     At all relevant times, LEMKE was and is a resident of the State of Connecticut, County of Litchfield and resides at 47 Canterbury Arms Road, New Milford, Connecticut 06776.

7.     At all relevant times, MILL CREEK TRUST was and still is a limited liability company organized and existing by virtue of the laws of the State of Delaware with its principal

place of business located at 5910 North Central Expressway, Suite 1100, Dallas, Texas 75206, and its executive offices currently located at  One Boca Place, 2255 Glades Road, Boca Raton, Florida 33431.

8.      At all relevant times, MILL CREEK TRUST was primarily and substantially engaged in the business of owning and developing real estate, the building of facilities and construction and development of residential facilities and their component structures.

9.      At all relevant times, MILL CREEK TRUST conducted business in the City of Yonkers, the State of New York and this District.

10.      At all relevant times, MCRT INVESTMENTS was and still is a limited liability company organized and existing by virtue of the laws of the State of Delaware with its principal place of business and executive offices located at 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

11.      At all relevant times, MCRT INVESTMENTS was primarily and substantially engaged in the business of financing, and/or owning and developing, real estate and building and facilities construction, including the financing and development of residential facilities and their component structures.

12.      At all relevant times, MCRT INVESTMENTS conducted business in the City of Yonkers, the State of New York and this District.

13.      At all relevant times, MCRT NORTHEAST was and still is a limited liability company organized and existing by virtue of the laws of the State of Delaware with its principal place of business and executive offices located at 140 Hempstead Ave, West Hempstead, New York 11552.

14.      At all relevant times, MCRT NORTHEAST was primarily and substantially engaged in the business of construction, operating and managing construction development of real estate and building and facilities construction, including the construction and development of residential

facilities and their component structures.

15.     At all relevant times, MCRT NORTHEAST conducted business in the City of Yonkers, the State of New York and this District.

16.     At all relevant times, WATER GRANT was and still is a limited liability company organized and existing by virtue of the laws of the State of Delaware with its principal place of business and executive offices located at 135 Route 202/206, Suite 9, Bedminster, New Jersey 07921.

17.      At all relevant times, WATER GRANT was primarily and substantially engaged in the business of owning, operating and developing real estate and building and facilities construction, including the construction and development of residential facilities and their component structures.

18.     At all relevant times, WATER GRANT conducted business in the City of Yonkers, the State of New York and this District.

19.     At all relevant times, MILL CREEK CORP. was and still is a corporation organized and existing by virtue of the laws of the State of New York with its principal place of business and executive offices located at 114 Old Country Road, # 560, Mineola, New York 11501.

20.     At all relevant times, MILL CREEK CORP. was primarily and substantially engaged in the business of constructing, operating and managing construction development of real estate and building and facilities construction, including the construction and development of residential facilities.

21.     At all relevant times, MILL CREEK CORP. conducted business in the City of Yonkers, the State of New York and this District.

22.     At all relevant times, MAC-LAD was and still is a corporation organized and existing by virtue of the laws of the State of New York with its principal place of business and executive offices located at 4195 Middle Country Road, Calverton, New York 11933.

4

23.     At all relevant times, MAC-LAD was primarily and substantially engaged in the business of furnishing and supplying certain building materials for construction and development projects.

24.     At all relevant times, MAC-LAD, conducted business in the City of Yonkers, the State of New York and this District.

25.     At all relevant times, ALLEN, was and still is a corporation organized and existing by virtue of the laws of the State of New York with its principal place of business and executive offices located at 135 Allen Blvd, Farmingdale, New York 11735.

26.     At all relevant times, ALLEN was primarily and substantially engaged in the business of furnishing and installing drywall in construction and development of building structures.

27.     At all relevant times, ALLEN conducted business in the City of Yonkers, the State of New York and this District.

## ALLEGATIONS COMMON TO ALL PLAINTIFFS' CLAIMS FOR RELIEF

28.     On and before October 10, 2017, construction activities took place at Parcels "H" and "I" on the Yonkers Downtown Waterfront Master Plan known as "Palisades Point".

29.     On and before October 10, 2017, construction at Palisades Point included activities at parcels of real property designated on the City tax map of Yonkers, New York as: Section 1, Block 640, Lot 1, Lot 25 and Lot 38; and Section 1, Block 643, Lot 1, Lot 24 and Lot 40 ("Palisades Point Project").

30.     On and before October 10, 2017, construction activities for the Palisades Point Project included a parcel of real property located at or about 20 Water Grant Street, Yonkers, New York ("Water Grant Street" or "Premises").

31.     By resolutions adopted by the City of Yonkers on January 27, 2009 and November 18, 2015 ("Resolutions") WATER GRANT was authorized to act pursuant to an agency agreement

for the purposes of, *inter alia*, a construction project at Water Grant Street.

32. The Resolutions authorized and empowered WATER GRANT to delegate such agency, in whole or in part, to agents, subagents, contractors, subcontractors, contractors and subcontractors of such agents and subagents and to such other parties as it chose.

33. WATER GRANT entered into an agency agreement dated December 29, 2015 ("Agency Agreement") in connection with the Palisades Point Project encompassing construction activities at Water Grant Street.

34. On and before October 10, 2017, WATER GRANT contracted for the alteration, renovation, repair, demolition and/or construction of portions of Water Grant Street.

35. The name of the project was designated the "Water Grant Street Project", IDA OSC Code Project Number 5507 15 09A (herein "Water Grant Street Project").

36. On and before October 10, 2017, construction activities took place for the Palisades Point Project, including the Water Grant Street Project, in accordance with the Agency Agreement.

37. WATER GRANT delegated construction services for the Palisades Point Project, including the Water Grant Street Project, to MCRT NORTHEAST.

38. At all relevant times, WATER GRANT owned Water Grant Street.

39. At all relevant times, WATER GRANT controlled Water Grant Street.

40. At all relevant times, by virtue of a long-term lease wherein WATER GRANT occupied and controlled Water Grant Street, it was the *de facto* owner of those Premises.

41. At all times relevant times, WATER GRANT exercised control of construction activities at Water Grant Street and for the Water Grant Street Project.

42. The purpose of the Water Grant Street Project was to erect a multi-story residential facility on the Premises.

43. On and before October 10, 2017, building construction activities were taking place at

the Premises for the Water Grant Street Project.

44.     The work activity at Water Grant Street was performed pursuant to a contract(s) or agreement(s) for the Water Grant Street Project which at all relevant times, was in full force and effect.

45.     On October 10, 2017, the Water Grant Street Project included alterations, rehabilitation, renovation, construction and/or demolition activities taking place at the Premises.

46.     The aforesaid construction, demolition, rehabilitation, renovation and/or repair at Water Grant Street for the Water Grant Street Project constituted construction activities within the meaning and intent of Article 10 of the New York State Labor Law ("Labor Law").

47.     At all relevant times, WATER GRANT had the duty to provide for overall safety on the job site(s) for the Water Grant Street Project.

48.     At all relevant times, MCRT NORTHEAST contracted to perform work and services for the Water Grant Street Project.

49.     At all relevant times, MCRT NORTHEAST performed work and services for the Water Grant Street Project at the Premises.

50.     MILL CREEK TRUST, as owner, *de facto* owner or lessee of Water Grant Street, contracted for construction services for the Water Grant Street Project.

51.     WATER GRANT, as owner, *de facto* owner, agent or lessee of Water Grant Street, contracted for construction services for the Water Grant Street Project.

52.     At all relevant times, MCRT NORTHEAST, as contractor, was engaged in building construction at the Premises for Water Grant Street Project.

53.     At all relevant times, the Water Grant Street Project was a building construction project which consisted of a multi-story residential building(s).

54.     At all relevant times, MCRT NORTHEAST provided construction management

services relative to the construction taking place at the Premises of the Water Grant Street Project.

55.     At all relevant times, MCRT NORTHEAST was the construction manager of the Water Grant Street Project.

56.     At all relevant times, MCRT NORTHEAST was the general contractor of the Water Grant Street Project.

57.     At all relevant times, MCRT NORTHEAST was the construction manager with the actual authority to direct and control work and to stop unsafe work means and methods of contractors and sub-contractors for the Water Grant Street Project.

58.     MCRT NORTHEAST was a construction manager on the Water Grant Street Project with overall responsibility for job safety on that construction project.

59.     MCRT NORTHEAST had the authority to provide for overall safety during construction for the Water Grant Street Project.

60.     At all relevant times, MCRT NORTHEAST was authorized and did retain the services of subcontractors for Water Grant Street Project.

61.     At all relevant times, MCRT NORTHEAST had the duty and the authority to provide for overall safety on the job site at the Premises and for the Water Grant Street Project.

62.     At all relevant times, MILL CREEK TRUST had the duty and the authority to provide for overall safety on the job site(s) for the Water Grant Street Project.

63.     MILL CREEK CORP. entered into a contract to perform certain services for the Water Grant Street Project.

64.     Pursuant to said contract, MILL CREEK CORP. was responsible for the supervision, direction and control of all work undertaken in the performance of the Water Grant Street Project.

65.     Pursuant to the contract to perform certain services at the Premises, MILL CREEK CORP. was responsible for payment for all materials, equipment and labor used in connection with

the performance of the Water Grant Street Project.

66.     Pursuant to its contract to perform certain services at the Premises, MILL CREEK CORP. was responsible for furnishing all materials, equipment and labor used in connection with the performance of the work at the Premises for the Water Grant Street Project.

67.     Pursuant to its contract to perform certain services at the Premises, MILL CREEK CORP. was responsible for the employment of safe and proper means and methods by contractors and sub-contractors in connection with the performance of the work.

68.     Pursuant to its contract to perform certain services at the Premises for the Water Grant Street Project, MILL CREEK CORP. was responsible for compliance with all applicable governmental laws, ordinances, rules and regulations pertinent to safety in connection with the work and that same were adhered to by the contractors, sub-contractors and their employees.

69.     Pursuant to its contract to perform certain services at the Premises of the Water Grant Street Project, MILL CREEK CORP. was responsible for keeping the construction Premises and surrounding sites and areas clean and free from debris and/or scattered material at all times.

70.     Pursuant to its contract to perform certain services for the Water Grant Street Project, MILL CREEK CORP. was responsible at all times for keeping the construction passageways and work areas free from obstructions, conditions and materials which presented hazards to the laborers.

71.     Pursuant to its contract to perform certain services for the Water Grant Street Project, MILL CREEK CORP. was responsible for keeping all building materials stored in an orderly manner and stable under all conditions and located so that they did not obstruct passageways, walkways, thoroughfares and work areas.

72.     Pursuant to its contract to perform certain services at the Premises, MILL CREEK CORP. was responsible for warranting that the work performed was in a good and workmanlike manner in accordance with the standards applicable to construction projects in New York.

73.     At all relevant times, MILL CREEK CORP. was the general contractor for the Water Grant Street Project.

74.     At all relevant times, MILL CREEK CORP. was the construction manager with the actual authority to direct and control work and to stop unsafe work means and methods of contractors and sub-contractors at the Premises and for the Water Grant Street Project.

75.     MILL CREEK CORP. was a construction manager for the Water Grant Street Project with overall responsibility for job safety.

76.     MILL CREEK CORP. had the authority to provide for overall safety for the Water Grant Street Project.

77.     PEARSON and LEMKE were employed by K & M Fire Protection.

78.     K & M Fire Protection was a subcontractor on the Water Grant Street Project.

79.     On or about October 10, 2017, PEARSON and LEMKE were on the Premises of the Water Grant Street Project performing their labors as employees for K & M Fire Protection for the benefit of the Defendants.

80.     On or about October 10, 2017, the Plaintiffs were in a hallway on the third floor of the building being constructed at the Water Grant Street Project (the "Hallway").

81.     The Hallway constituted a "passageway" within the meaning and intent of the Labor Law.

82.     Materials were stored in the Hallway, including multiple stacks of numerous panels of drywall ("Drywall Panels").

83.     The Drywall Panels were placed leaning against a stud wall in the Hallway.

84.     On October 10, 2017, the Plaintiffs were passing through the Hallway when multiple Drywall Panels fell on the Plaintiffs.

85.     The multiple Drywall Panels were of significant weight.

86.     Each of the individual leaning Drywall Panels weighed approximately 118.8 pounds.

87.     The leaning Drywall Panels were approximately 5/8" x 54" x 144".

88.     The size and weight of the falling Drywall Panels were capable of generating significant force.

89.     The Plaintiffs sustained serious personal injuries and damages as a result of being struck by the falling Drywall Panels.

90.     The Drywall Panels that fell and struck the Plaintiffs generated significant force.

91.     There was no proper protection for the workers performing their labors in the Hallway - a "passageway" or "thoroughfare" under the Labor Law.

92.     As a result of the foregoing, PEARSON and LEMKE sustained serious personal injuries and consequent damages.

93.     The failure to afford the Plaintiffs proper protection was a substantial factor resulting in their sustaining serious personal injuries and damages.

94.     At all relevant times, MILL CREEK TRUST, MCRT INVESTMENTS, MCRT NORTHEAST, WATER GRANT and MILL CREEK CORP., and each of them, had the nondelegable duty to so construct, equip, arrange and operate the work place at the Premises of the Water Grant Street Project so as to provide Plaintiffs and other workers at that work site with proper protection for their life, health and safety.

95.     At all relevant times, MILL CREEK TRUST, MCRT INVESTMENTS, MCRT NORTHEAST, WATER GRANT and MILL CREEK CORP., and each of them, had the nondelegable duty to furnish Plaintiffs with a safe place in which to perform their labors at the Water Grant Street Project work site.

96.     At all relevant times, MILL CREEK TRUST, MCRT INVESTMENTS, MCRT NORTHEAST, WATER GRANT and MILL CREEK CORP., and each of them, had the

nondelegable duty to Plaintiffs and other workers at the Premises of Water Grant Street Project to protect them against the perils and hazards of being struck by falling material.

97.     The leaning Drywall Panels were not protected, secured, braced or supported by any safety devices(s).

98.     At all relevant times, Plaintiffs were not provided with any safety devices to protect them from the hazards of being struck by falling materials, including the Drywall Panels.

99.     The limitations on liability set forth in CPLR Section 1601 do not apply to the claims in this action.

100.    The limitations on liability set forth in CPLR Section 1601 do not apply to the claims in this action by reason of one or more of the exemptions set forth in CPLR Section 1602.

101.    The limitations on liability set forth in CPLR Section 1601 do not apply to the claims in this action by reason of the exemptions set forth in CPLR Section 1602(8).

**PLAINTIFFS' FIRST CLAIM FOR RELIEF**
**AGAINST DEFENDANTS MILL CREEK TRUST, MCRT INVESTMENTS,**
**MCRT NORTHEAST, WATER GRANT and MILL CREEK CORP.**
(Violations of Section 240(1) of the Labor Law)

102.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs 1 through 101 above with the same force and effect as though fully set forth at length herein.

103.    At all relevant times, Plaintiffs were members of a protected class of workers entitled to safety and protection from the risks of being struck by falling material pursuant to Section 240(1) of the Labor Law.

104.    The occurrence complained of herein was caused by reason of the breach of the nondelegable duties owed to the Plaintiffs by MILL CREEK TRUST, MCRT INVESTMENTS, MCRT NORTHEAST, WATER GRANT and MILL CREEK CORP., and each of them, as set forth

by Labor Law Section 240(1).

105.   The occurrence complained of was caused by reason of the violation of Section 240(1) of the New York State Labor Law by MILL CREEK TRUST, MCRT INVESTMENTS, MCRT NORTHEAST, WATER GRANT and MILL CREEK CORP., and each of them, their members, agents, sub-agents, servants, employees, contractors, sub-contractors, supervisors, forepersons and/or managers with respect to the ownership, operation, management, supervision, inspection, maintenance, control, alteration, renovation, construction and repair of the Premises of the Water Grant Street Project; by violation of the nondelegable duties and responsibilities imposed on these Defendants by section 240(1) of the Labor Law in that they failed to furnish or cause to be furnished for the performance of the Plaintiffs' labors, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to persons so employed which should have been so constructed, placed and operated as to give the Plaintiffs proper protection; in permitting, allowing and/or suffering unprotected and unsecured construction materials, leaning stacks of multiple Drywall Panels to be improperly stored and located in a passageway and thoroughfare and work area; in obstructing the passageways and thoroughfares; failing to keep the work area, passageway and thoroughfare free from materials; in failing to properly brace and secure the heavy construction materials so as to prevent them from falling over in the passageway, striking the Plaintiffs as they labored and causing injury and damages to the Plaintiffs; in failing to provide temporary braces, supports, jacks or other devices to support the stacks of multiple heavy leaning Drywall Panels in the passageway; in permitting, allowing and/or suffering a trap to be and remain at the worksite; in exposing the Plaintiffs to an unreasonable risk and peril of harm from the falling of heavy materials; in failing to provide or erect safety devices necessary to give proper protection to Plaintiffs, members of the protected class of workers under the Labor Law; in failing to provide Plaintiffs with

13

a safe place to work; in failing to furnish or erect or cause to be furnished or erected for the performance of Plaintiffs' labors proper and safe working conditions and location in conformity with industry standards; in permitting, allowing and/or suffering the improper storage, location and placement of heavy construction materials without any method of securing same against the hazard of falling and causing injury to the Plaintiffs and other laborers; in causing, allowing and suffering the aforesaid materials to be so constructed, placed and operated so as to give Plaintiffs inadequate, improper and unsafe protection, all of which were proximate causes of Plaintiffs' injuries.

106.    As a direct and proximate result of the foregoing, Plaintiffs were rendered sick, sore, lame and disabled and were caused to receive medical attention, incur obligations for medical treatment, medications, therapies, endure painful procedures, suffer pain, discomfort, be disabled, suffer loss of income, opportunity, benefits, prevented from enjoying the normal fruits of their activities during the periods of disability; caused to suffer mental anguish, and upon information and belief, Plaintiffs will in the future, continue to suffer pain, anguish, disability and to incur further and continuing expenses and obligations for future medical care, treatment, medications and suffer other and continuing losses as herein described.

107.    By reason of the foregoing, Plaintiffs have both been damaged in an amount to be determined at trial, but not more than TEN MILLION ($10,000,000) DOLLARS each.

## PLAINTIFFS' SECOND CLAIM FOR RELIEF
## AGAINST DEFENDANTS MILL CREEK TRUST, MCRT INVESTMENTS, MCRT NORTHEAST, WATER GRANT and MILL CREEK CORP.
### (Violations of Section 241(6) of the Labor Law)

108.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in the paragraphs 1 through 107 above with the same force and effect as though fully set forth at length herein.

109.    MILL CREEK TRUST, MCRT INVESTMENTS, MCRT NORTHEAST, WATER

GRANT and MILL CREEK CORP., and each of them, their members, agents, sub-agents, servants, employees, contractors, sub-contractors, supervisors, forepersons and/or managers as owners and general contractors of the aforesaid Premises and the Water Grant Street Project, owed the nondelegable duty to the Plaintiffs to provide them with reasonable and adequate protection.

110.    MILL CREEK TRUST, MCRT INVESTMENTS, MCRT NORTHEAST, WATER GRANT and MILL CREEK CORP., and each of them, their members, agents, sub-agents, servants, employees, contractors, sub-contractors, supervisors, forepersons and/or managers as owners and general contractors of the aforesaid Premises and the Water Grant Street Project owed the nondelegable duty to the Plaintiffs to so construct, equip, arrange and operate the work place at the aforesaid Premises so as to provide the Plaintiffs, and other workers with reasonable and adequate protection for their life, health and safety.

111.    These Defendants breached their nondelegable duties owed to the Plaintiffs as members of a protected class of workers pursuant to Labor Law Section 241(6).

112.    The occurrence complained of and the injuries sustained by the Plaintiffs were proximately and concurrently caused by reason of one or more of these Defendants' breach of section 241(6) of the Labor Law and Industrial Code Rule 23 (12 NYCRR 23) and more specifically §23-1.1, §23-1.2, §23-1.3, §23-1.4, §23-1.5 and all of their subdivisions; §23-1.7(e)(1) and §23-1.7(e)(2) and all of their subparts, §23-1.8, §23-1.15, §23-1.16, §23-1.17 and all of their subdivisions; §23-2.1(a)(1), 23-3.2, 23-3.3, 23-3.4, and all of their subparts, in that one or more of these Defendants failed to so construct, equip, arrange, operate and conduct the Premises where Plaintiffs' labors were being performed so as to provide reasonable and adequate protection for the life health and safety of the Plaintiffs as well as of other workers lawfully frequenting the area of demolition, renovation and construction activity taking place on the Premises; one or more of these Defendants further violated their duty, responsibility and obligation of law to provide safe working

conditions and safe places to work for persons employed in construction and renovation activity; one or more of these Defendants breached their nondelegable duty to furnish the Plaintiffs with safe working location and safety devices as required by Article 23 of the Industrial Code herein and Section 241(6) of the Labor Law, so as to create a trap and perilous condition, hazardous to life, safety and health in violation of section 241(6) of the Labor Law and Industrial Code Rule 23.

113.    The aforesaid leaning stacks of Drywall Panels were not properly stored.

114.    The Hallway constituted a "passageway" within the meaning and intent of the Industrial Code.

115.    The Hallway was not a properly designated location for the storage of the aforesaid materials.

116.    The materials stored in the Hallway were not stored in a safe and orderly manner.

117.    The materials stored in the Hallway were not stable under all conditions.

118.    The leaning stacks of  Drywall Panels in the Hallway were not braced.

119.    The leaning stacks of Drywall Panels in the Hallway were not secured

120.    The stored materials in the Hallway, including the Drywall Panels, obstructed a passageway or thoroughfare.

121.    The stored materials in the Hallway were not maintained to prevent falling or shifting.

122.    The stored materials in the Hallway endangered laborers using that passageway or thoroughfare.

123.    At all relevant times, MILL CREEK TRUST, MCRT INVESTMENTS, MCRT NORTHEAST, WATER GRANT and MILL CREEK CORP., and each of them, had the nondelegable duty to protect and support the leaning stacks Drywall Panels in the Hallway and ensure that such leaning Drywall Panels were safely positioned in the Hallway or elsewhere so as not

to fall and injure the Plaintiffs or other laborers.

124.     At all relevant times, MILL CREEK TRUST, MCRT INVESTMENTS, MCRT NORTHEAST, WATER GRANT and MILL CREEK CORP., and each of them, had the nondelegable duty to the Plaintiffs and other workers at the Premises to protect them against the perils and hazards of being struck and injured by falling construction materials.

125.     At all relevant times, MILL CREEK TRUST, MCRT INVESTMENTS, MCRT NORTHEAST and WATER GRANT,  and each of them, had the nondelegable duty to ensure that the stacks of Drywall Panels in the Hallway were properly and safely stored for the protection of the Plaintiffs and the other laborers.

126.     At all relevant times, MILL CREEK TRUST, MCRT INVESTMENTS, MCRT NORTHEAST, WATER GRANT and MILL CREEK CORP., and each of them, had the nondelegable duty to protect and support the leaning Drywall Panels in the Hallway and to see that such panels were safely located in a designated storage area for the protection of the Plaintiffs and the other laborers.

127.     At all relevant times, MILL CREEK TRUST, MCRT INVESTMENTS, MCRT NORTHEAST, WATER GRANT and MILL CREEK CORP., and each of them, had the nondelegable duty to protect and support the multiple stacks of Drywall Panels of leaning in the Hallway and to see that such panels were not left in that passageway.

128.     As a direct and proximate result of the foregoing, Plaintiffs were rendered sick, sore, lame and disabled and were caused to receive medical attention, incur obligations for medical treatment, medications, therapies, endure painful procedures, suffer pain, discomfort, be disabled, suffer loss of income, opportunity, benefits, prevented from enjoying the normal fruits of their activities during the periods of disability; caused to suffer mental anguish, and upon information and belief, Plaintiffs will in the future, continue to suffer pain, anguish, disability and to incur further and

continuing expenses and obligations for future medical care, treatment, medications and suffer other and continuing losses as herein described.

129.     By reason of the foregoing, Plaintiffs have both been damaged in an amount to be determined at trial, but not more than TEN MILLION ($10,000,000) DOLLARS each.

**PLAINTIFFS' THIRD CLAIM FOR RELIEF**
**AGAINST DEFENDANTS MILL CREEK TRUST, MCRT INVESTMENTS,**
**MCRT NORTHEAST, WATER GRANT and MILL CREEK CORP.**
(Violations of Section 200 of the Labor Law)

130.     Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs 1 through 129 above with the same force and effect as though fully set forth at length herein.

131.     The occurrence complained of and the injuries sustained by the Plaintiffs were proximately and concurrently caused by reason of the breach of  Section 200 of the Labor Law by MILL CREEK TRUST, MCRT INVESTMENTS, MCRT NORTHEAST, WATER GRANT and MILL CREEK CORP., and each of them.

132.     Said Defendants owed the Plaintiffs a duty of reasonable care to provide Plaintiffs with a safe place in which to perform their labors.

133.     Said Defendants owed the Plaintiffs a duty of maintaining the Premises in a safe condition, free from hazards and perils dangerous to life and limb.

134.     At all relevant times, said Defendants actively and actually directed, controlled, supervised, managed and inspected the aforesaid renovation and construction project and the means, methods and manner of the work and the work site and equipment, tools and materials at the work site.

135.     At all relevant times, said Defendants actively and actually directed, controlled, supervised, managed and inspected the Premises for the existence and remediation of hazards and

dangerous conditions thereat.

136.     At all relevant times, said Defendants were aware of the placement and storage of stacks of leaning Drywall Panels in the third floor Hallway.

137.     At all relevant times, said Defendants directed, authorized, condoned, permitted and allowed the placement and storage of stacks of leaning Drywall Panels in the third floor Hallway.

138.     No warning devices, safety barricades, caution tape or other devices were in place at the location of the Drywall Panels in the Hallway.

139.     At all relevant times, said Defendants knew or should have known that the placement and storage of stacks of leaning Drywall Panels in the third floor Hallway in the manner performed presented a danger and created a hazardous condition of the work and a hazardous condition of the Premises.

140.      At all relevant times, said Defendants had the power, authority capacity, capability and economic means to acquire, hire, construct, place and operate a secure and safe location for the storage of heavy construction materials such as the stacks of multiple Drywall Panels in the Hallway for the benefit of the safety of the Plaintiffs and others in the performance of their labors.

141.     Said Defendants breached their duties and responsibilities owed to the Plaintiffs in failing to exercise reasonable care in providing Plaintiffs with a safe place in which to work and in failing to maintain the Water Grant Street Project and Premises in a safe condition, free from hazards and perils dangerous to life and limb and in failing to comply with laws, statutes, codes, rules, regulations and standards having application to the circumstances and conditions existing at the said Premises at said time and place.

142.      Said Defendants were negligent, careless and reckless in the operation, management, supervision, direction, inspection, maintenance, control, alteration, renovation, and

construction of the Premises, which negligence, carelessness and recklessness were concurrent and proximate causes of the occurrence of which complaint is made and which consisted of the following amongst other things; in causing, allowing and suffering dangerous and hazards conditions at the work location(s) which such hazardous and dangerous conditions were known to said Defendants, or in the exercise of reasonable care should have been known to these Defendants and remedied; in causing, allowing and suffering dangerous and hazardous work methods by contractors and sub-contractors which methods caused dangerous and hazardous working conditions at the work location(s) and such dangerous and hazardous work methods were known to said Defendants, or in the exercise of reasonable care should have been known to said Defendants and remedied; in failing to protect the Premises against unreasonable hazards and perils; in permitting and allowing unreasonable risks of injury to be and exist in the Premises; in failing to furnish and provide Plaintiffs with a safe place in which to perform their labors; in failing to abide by the safety mandates of the Labor Law §§240(1), 241(6), and 200, Industrial Code Rule 23, state and local Building Codes, applicable OSHA regulations, construction industry standards, ANSI standards, custom and practice having relevant application to the facts and circumstances and conditions as herein and above described to the extent that such codes, rules, regulations and construction industry standards demonstrate these said Defendants' departure from providing safe Premises free from known hazardous conditions and safe working conditions free from known hazardous contractor means and methods; in actively and actually causing and creating the dangerous and hazardous conditions thereat by directing, allowing, authorizing, condoning and permitting the placement and storage of multiple stacks of large and heavy leaning Drywall Panels in the Hallway, a passageway not safe or suited or appropriate to accommodate such materials; in failing to prohibit and prevent the placement and storage of multiple stacks of large and heavy leaning Drywall Panels in the Hallway, a passageway not safe, suited or appropriate to accommodate such materials; in acting with

reckless disregard for the safety of the Plaintiffs and others; and in otherwise being negligent, careless and reckless in connection with the Premises and the Water Grant Street Project.

143.    As a direct and proximate result of the foregoing, Plaintiffs were rendered sick, sore, lame and disabled and were caused to receive medical attention, incur obligations for medical treatment, medications, therapies, endure painful procedures, suffer pain, discomfort, be disabled, suffer loss of income, opportunity, benefits, prevented from enjoying the normal fruits of their activities during the periods of disability; caused to suffer mental anguish, and upon information and belief, Plaintiffs will in the future, continue to suffer pain, anguish, disability and to incur further and continuing expenses and obligations for future medical care, treatment, medications and suffer other and continuing losses as herein described.

144.    By reason of the foregoing, Plaintiffs have both been damaged in an amount to be determined at trial, but not more than TEN MILLION ($10,000,000) DOLLARS each.

### PLAINTIFFS' FOURTH CLAIM FOR RELIEF
### AGAINST DEFENDANTS MILL CREEK TRUST, MCRT INVESTMENTS, MCRT NORTHEAST, WATER GRANT and MILL CREEK CORP.
(Negligence)

145.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs 1 through 144 above with the same force and effect as though fully set forth at length herein.

146.    The occurrence complained of and the injuries sustained by the Plaintiffs were proximately and concurrently caused by reason of the negligence of one or more of MILL CREEK TRUST, MCRT INVESTMENTS, MCRT NORTHEAST, WATER GRANT and MILL CREEK CORP.

147.    OSHA safety standards are applicable to the subject construction project.

148.    ANSI safety standards are applicable to the subject construction project.

149.     OSHA safety standards are industry standards for the safety and benefit of laborers at this construction project, including the Plaintiffs.

150.     ANSI safety standards are industry standards for the safety and benefit of laborers at the subject construction project, including the Plaintiffs.

151.     Said Defendants failed to adhere to the industry standards for safety as contained in OSHA, and which were applicable to the subject construction project.

152.     Said Defendants failed to adhere to the industry standards for safety as contained in ANSI, and which were applicable to the subject construction project.

153.     The failure of said Defendants to adhere to applicable OSHA safety standards on the subject construction project was a proximate cause of the injuries and damages to the Plaintiffs.

154.     The failure of said Defendants to adhere to applicable ANSI safety standards on the subject construction project was a proximate cause of the injuries and damages to the Plaintiffs.

155.     At all relevant times, said Defendants had actual and/or constructive notice, for a sufficient period of time to require correction in the exercise of ordinary care, of the placement and storage of stacks of leaning Drywall Panels in the third floor Hallway in a manner that created and presented dangerous and hazardous conditions on the Premises.

156.     As a direct and proximate result of the foregoing, Plaintiffs were rendered sick, sore, lame and disabled and were caused to receive medical attention, incur obligations for medical treatment, medications, therapies, endure painful procedures, suffer pain, discomfort, be disabled, suffer loss of income, opportunity, benefits, prevented from enjoying the normal fruits of their activities during the periods of disability; caused to suffer mental anguish, and upon information and belief, Plaintiffs will in the future, continue to suffer pain, anguish, disability and to incur further and continuing expenses and obligations for future medical care, treatment, medications and suffer other and continuing losses as herein described.

157.     By reason of the foregoing, Plaintiffs have both been damaged in an amount to be determined at trial, but not more than TEN MILLION ($10,000,000) DOLLARS each.

## PLAINTIFFS' FIFTH CLAIM FOR RELIEF
## AGAINST DEFENDANT MAC-LAD

(Negligence)

158.     Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs 1 through 157 above with the same force and effect as though fully set forth at length herein.

159.     At all relevant times, MAC-LAD contracted to supply and deliver Drywall Panels to the subject construction project.

160.     On or before October 10, 2017, MAC-LAD supplied and delivered the Drywall Panels to the subject construction project.

161.     On or before October 10, 2017, MAC-LAD placed the Drywall Panels in stacks leaning at an angle against a stud wall in the Hallway on the third floor at the subject construction project.

162.     MAC-LAD did not use a brace(s) to hold the Drywall Panels against the stud wall.

163.     MAC-LAD did not secure the leaning Drywall Panels against the stud wall.

164.     MAC-LAD did not tie the leaning Drywall Panels to the stud wall.

165.     MAC-LAD did not properly or safely place or store the Drywall Panels.

166.     MAC-LAD placed the Drywall Panels in the Hallway where they obstructed a passageway, thoroughfare, walkway, aisle, common area and/or work area.

167.     MAC-LAD did not engage or utilize any safety device to secure the Drywall Panels to the stud wall against their falling or slipping.

168.     The leaning Drywall Panels in the Hallway were subject to the forces of gravity.

169.    The leaning Drywall Panels presented a hazard and a danger.

170.    The leaning Drywall Panels were capable of producing significant harm and injuries to the Plaintiffs and other laborers in the third-floor Hallway.

171.    MAC-LAD failed to adhere to the industry standards for safety.

172.    MAC-LAD failed to adhere to applicable OSHA standards applicable to the work it performed at the subject construction project.

173.    MAC-LAD failed to adhere to ANSI standards applicable to the work it performed at the subject construction project.

174.    MAC-LAD failed to adhere to industry standards applicable to the work it performed at the subject construction project.

175.    MAC-LAD failed to adhere to the applicable provisions of the Industrial Code.

176.    MAC-LAD failed to adhere to the applicable provisions of the Labor Law.

177.    MAC-LAD, its agents, servants, employees, contractors and others under its control and supervision were careless, reckless and negligent in the manner it performed its work at the Premises for the Water Grant Street Project.

178.    At all relevant times, MAC-LAD had actual and/or constructive notice, for a sufficient period of time to require correction in the exercise of ordinary care, of the placement and storage of stacks of leaning Drywall Panels in the third floor Hallway in a manner that created and presented dangerous and hazardous conditions on the Premises.

179.    The negligence and violation of applicable laws, codes, rules, regulations, standards and statutes by MAC-LAD on the subject construction project was a proximate cause of the injuries and damages suffered by the Plaintiffs.

180.    As a direct and proximate result of the foregoing, Plaintiffs were rendered sick, sore, lame and disabled and were caused to receive medical attention, incur obligations for medical

treatment, medications, therapies, endure painful procedures, suffer pain, discomfort, be disabled, suffer loss of income, opportunity, benefits, prevented from enjoying the normal fruits of their activities during the periods of disability; caused to suffer mental anguish, and upon information and belief, Plaintiffs will in the future, continue to suffer pain, anguish, disability and to incur further and continuing expenses and obligations for future medical care, treatment, medications and suffer other and continuing losses as herein described.

181.    By reason of the foregoing, Plaintiffs have both been damaged in an amount to be determined at trial, but not more than TEN MILLION ($10,000,000) DOLLARS each.

## PLAINTIFFS' SIXTH CLAIM FOR RELIEF
## AGAINST DEFENDANT ALLEN
### (Negligence)

182.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs 1 through 181 above with the same force and effect as though fully set forth at length herein.

183.    On or about July 13, 2016, ALLEN contracted with MCRT NORTHEAST to perform services at the Premises for the Water Grant Street Project.

184.    The contract provided, *inter alia*, for ALLEN to furnish and install drywall throughout the Premises for the Water Grant Street Project.

185.    At all relevant times, ALLEN was responsible for providing a safe place to work for its employees and the employees of sub-contractors and others who its sub-contractors brought to the Water Grant Street Project.

186.    At all relevant times, ALLEN was responsible for the safety of the workers of others on or in the Water Grant Street Project.

187.    At all relevant times, ALLEN was responsible to ensure that walkways, aisles,

common areas and work areas were free from excess stored material.

188.    On or before October 10, 2017, ALLEN supplied and delivered the Drywall Panels to the Premises for the Water Grant Street Project..

189.    At all relevant times, ALLEN contracted to supply and deliver Drywall Panels to the subject construction project.

190.    On or before October 10, 2017, ALLEN provided for the placement of the stacks of Drywall Panels leaning against a stud wall in the third floor Hallway at the Premises of the subject construction project.

191.    ALLEN failed to adhere to the industry standards for safety applicable to the work they performed on the subject construction project.

192.    ALLEN failed to adhere to OSHA standards applicable to the work they performed at the construction project.

193.    ALLEN failed to adhere to ANSI standards applicable to the work they performed at the Water Grant Street Project.

194.    ALLEN failed to adhere to the applicable provisions of the Industrial Code.

195.    ALLEN, its agents, servants, employees, contractors and others under its control and supervision were careless, reckless and negligent in the manner it performed its work at the Premises of the Water Grant Street Project.

196.    At all relevant times, ALLAN had actual and/or constructive notice, for a sufficient period of time to require correction in the exercise of ordinary care, of the placement and storage of stacks of leaning Drywall Panels in the third floor Hallway in a manner that created and presented dangerous and hazardous conditions on the Premises.

197.    The negligence and violation of applicable laws, codes, rules, regulations, standards and statutes by ALLEN on this construction project was a proximate cause of the injuries and

damages suffered by the Plaintiffs.

198.    As a direct and proximate result of the foregoing, Plaintiffs were rendered sick, sore, lame and disabled and were caused to receive medical attention, incur obligations for medical treatment, medications, therapies, endure painful procedures, suffer pain, discomfort, be disabled, suffer loss of income, opportunity, benefits, prevented from enjoying the normal fruits of their activities during the periods of disability; caused to suffer mental anguish, and upon information and belief, Plaintiffs will in the future, continue to suffer pain, anguish, disability and to incur further and continuing expenses and obligations for future medical care, treatment, medications and suffer other and continuing losses as herein described.

199.    By reason of the foregoing, Plaintiffs have both been damaged in an amount to be determined at trial, but not more than TEN MILLION ($10,000,000) DOLLARS each.

**WHEREFORE,** Plaintiffs demand judgment against one or more of the Defendants on each of Plaintiffs' First, Second, Third, Fourth, Fifth and Sixth Claims for Relief in an amount to be determined at trial, but not more than TEN MILLION DOLLARS ($10,000,000) for each Plaintiff on each claim, together with all interest and the costs and disbursements of this action; and such other and further relief as this Court deems just and proper in the circumstances.

Dated: New York, New York
　　　 April 8, 2020

                              Respectfully submitted,

                              **EDELMAN & EDELMAN, P.C.**

                              _____

                              Michael K. O'Donnell, Esq. (MO 3717)
                                   *Of Counsel*
                              *Attorneys for Plaintiffs*
                              61 Broadway, Suite 2220
                              New York, New York 10006
                              Tel.: (212) 943-1200

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs, by their attorneys, hereby

demand a jury trial on all issues so triable that are raised by this Complaint.

Dated: New York, New York
       April 8, 2020

Respectfully submitted,

_____
Michael K. O'Donnell, Esq. (MO 3717)
*Of Counsel*
**EDELMAN & EDELMAN, P.C.**
*Attorneys for Plaintiffs*
61 Broadway, Suite 2220
New York, New York 10006
Tel.: (212) 943-1200

28